JOSEPH KNAFFL *et al. v.* KNOXVILLE BANKING & TRUST Co.

(*Knoxville.* September Term, 1917.)

1. **APPEAL AND ERROR.** Compromise with debtors. Discretion of chancellor.

In proceeding to wind up affairs of a bank, the chancellor in approving a compromise agreement with the stockholders and directors has a legal and judicial discretion, the abuse of which may be reviewed on appeal. (*Post, p.* 244.)

Cases cited and approved: Green v. Officers' etc., Knoxville Banking & Trust Co., 133 Tenn., 630; MacDonald v. Aetna Indemnity Co., 88 Conn., 571; Lamar v. Taylor, 141 Ga., 227.

2. **BANKS AND BANKING.** Compromise with debtors. Discretion of chancellor. Scope of inquiry.

In a proceeding to wind up affairs of bank, where receiver petitioned for leave to compromise claims against stockholders and directors, the inquiry was not limited to whether there were sustainable causes of action against such persons, but the question was whether it was practicable and advantageous to compromise. (*Post, pp.* 244, 245.)

3. **BANKS AND BANKING.** Compromise with debtors. Discretion of chancellor. Scope of inquiry.

In a proceeding to wind up affairs of bank, where the receiver recommended a compromise, and creditors of the bank by their attorneys advised the compromise, and the master, the chancellor, and the court of civil appeals were in favor of the compromise, it was not an abuse of discretion to order it to be made. (*Post, pp.* 245, 247.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to

the Court of Civil Appeals from the Supreme Court.—WILL D. WRIGHT, Chancellor.

WRIGHT & JONES and GREEN, WEBB & TATE, for Jos. Knaffl and others.

·POWERS & THORNBURGH, for J. C. Kenner.

C. T. CATES, JR., and L. H. SPILMAN, for stockholders and directors.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The above-entitled cause is a general creditors' proceeding in which the Knoxville Banking & Trust Company is being wound up as an insolvent corporation. John W. Green, Esq., of the Knoxville bar, was appointed receiver of the defendant bank, and is now engaged in winding up its affairs under the direction of the court. In March, 1913, under the direction of the chancellor, Green, as receiver, filed a bill against the principal stockholders of the bank seeking to recover of them dividends which had been paid to them on their stockholdings in the bank during a certain period of time when it is alleged the bank was insolvent.

About the same time the receiver filed another bill of complaint, under the direction of the chancellor, against the directors of the bank, seeking to hold them liable for negligence and willful mismanagement of its affairs.

139 Tenn.—16

To both of the above bills filed by the receiver defenses were interposed by those persons sued. To the bill against the directors a demurrer was filed, which the chancellor sustained, dismissing the receiver's bill. However, the receiver appealed to this court where the chancellor's decree was reversed. The opinion of this court on the demurrer is reported. *Green* v. *Officers, etc., Knoxville Banking & Trust Co.*, 133 Tenn., 630, 182 S. W., 244. The cause was remanded to the chancery court for further proceedings against the defendant directors.

Thereafter, the various persons sued in both of the two actions placed before the receiver a proposition to compromise the suits, so far as they were concerned. Their offer was recommended for acceptance by the receiver to the chancellor in a petition for guidance filed in the general creditors' cause in May, 1916, in which petition the receiver set forth his reasons for recommending the acceptance of the proposition, which was one for the payment *in solido* of the sum of $25,000 in satisfaction of all claims against the proposers as stockholders and directors. The chancellor by decretal order referred the matter to the master for a report, upon proof to be taken, whether or not it would be to the best interest of the creditors of the insolvent bank that the compromise offer should be accepted.

A formal and full letter was sent by the special commissioner to all depositors in, and creditors of, the bank, notifying them of the time and place of

the taking of proof. The depositors in the bank numbered several hundreds, and many of those so addressed replied, stating their judgment and attitude in respect of the acceptance of the compromise offer of $25,000. A considerable amount of proof was taken in addition.

The chancellor, upon the report of the master favorable to the acceptance being excepted to, passed a decree of confirmation. One creditor alone prosecuted an appeal from the chancellor's decree to the court of civil appeals. The last-named court held that the chancellor's decree was correct.

A petition for *certiorari* was filed by the depositor-creditor above referred to and the cause is before this court for final determination.

On the original hearing we reached the conclusion that, in point of fact, the defendants were so far solvent and possessed of estates that there could be collected from them a much larger aggregate sum than $25,000, which was one of the questions submitted to the master. We still entertain that opinion.

But we are asked to consider another and preliminary question: What is the probability of judgments being secured against the proposers?

It seems to be conceded and to be clear that a liability for about $12,500 may be enforced by way of judgment obtained and execution issued against bank for negligence and mismanagement to produce those sued as stockholders. This leaves for determination the probable liability of the directors of the

a fund that will equal or surmount the remaining $12,500. What is to be further said relates to this phase of the litigation.

The decree of the chancellor approving the making of the compromise adjustment was one entered by him in the exercise of his discretionary power. However, the discretion was not an absolute but a legal or judicial one, the abuse of which may be reviewed on appeal. *MacDonald* v. *Ætna Indemnity Co.,* 88 Conn., 571, 92 Atl., 154; *Lamar* v. *Taylor,* 141 Ga., 227, 243, 80 S. E., 1085.

The question brought before the chancellor for decision related to the course of conduct to be pursued by the receiver as an officer of his court, in respect of a matter of prudential policy touching the administration of the assets of the receivership estate. Many and various considerations were to be weighed in arriving at a determination as to what was the course of prudence. The inquiry included the probable validity of the claims urged by the receiver, the difficulties and embarrassment that would attend an effort to enforce same in the courts, the delays and expenses to be incurred, and the collectibility of any judgment if recovered.

The chancellor below was, and the appellate courts on appeal are, not to decide whether the receiver had sustainable causes of action against the stockholders and directors. As is well said in *MacDonald* v. *Aetna Indemnity Co.,* supra, respecting what is to be considered in such a case:

"For the most part these are purely practical considerations. At points, however, some of them touch legal questions quite closely. This is particularly true of the matter of the validity of the claim which is the subject of the proposed compromise. That is an important factor in the situation. No intelligent conclusion, as to wisdom or unwisdom of the proposed compromise, can be arrived at which does not take it into account. And yet the question of validity, important as it is, is not in issue. Its decision is not called for, and none could be made which could possess any other importance than as expressing a personal view. It would bind nobody, and conclude nothing. The inquiry which the trial court was called upon to make had, and that which we are now to make has, no other purpose and possesses no other importance than the ascertainment in a general way of the probable or possible result of litigation of the claim. This inquiry, to be intelligent, must be made by one possessed of legal knowledge, and in the pursuit of it legal knowledge must be employed. But legal decision is not called for."

Was there an abuse of discretion? If we entertained doubt as to the wisdom of the ruling made in the courts below, we should decline to override the conclusion reached, in the face of the record showing which is as follows:

(a) The receiver, who is an eminent lawyer, of wide experience and high standing in affairs of business, recommended acceptance of the offer of the de-

fendants, on the ground of his doubt as to his ability to show liability on the part of the directors sued. His counsel concur, testifying that a recovery against the directors is doubtful.

(b) Every lawyer who testified on the point, among them several of wide practice and experience, stated that they deemed the proposed compromise to be one to the interest of their clients who held demands against the insolvent estate.

(c) The largest creditors, such as banks and large mercantile concerns who have occasion to weigh and deal with such matters of credits and settlements, recommend that the compromise be concluded.

(d) A large majority of the creditors, whether in number or amount of claims, are of like mind.

(e) On reference to the master he reported in favor of the making of the compromise being authorized by the court, and only two of many hundreds of depositor-creditors excepted to same.

(f) The chancellor approved the report, and passed a decree of authorization, as above stated.

(g) The court of civil appeals concurred with the chancellor, on a review of the record, regardless of a contention that the master and chancellor in concurring had settled the matter.

The amplest opportunity was given to the creditors to be heard in reference to the advisability and acceptability of the offer.

On full consideration we are of opinion that the result reached in the lower courts must be approved

and the decree affirmed.   The petition to rehear is sustained.   A decree will pass accordingly, with a remand of the cause to the chancery court for further proceedings.

The costs of the appeal will be paid, one-half by appellant Kenner and one-half by the receiver.