IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

### KNOXVILLE, SEPTEMBER TERM, 1915.

JOHN W. GREEN v. OFFICERS AND DIRECTORS OF KNOX-
VILLE BANKING & TRUST CO.*

*(Knoxville.* September Term, 1915.)

1. BANKS AND BANKING. Officers and directors. Liability to
bank. Action. Premature character.
A bill was prematurely brought at the chancellor's direction by the
receiver of an insolvent bank against its officers and directors to
recover for loans negligently made by them, whereby the in-
solvency was brought about, where the debtors were not wholly
insolvent when suit was brought, but collections might yet
be made from them, since there can be no recovery for negli-
gence without damages resulting therefrom, but it would be oth-
erwise where such insolvency existed. (*Post, pp.* 614-618.)

Cases cited and approved: Johnson v. Churchwell, 38 Tenn., 146;
Allison v. Coal Co., 87 Tenn., 63; Jackson v. Meek, 87 Tenn., 69;
Albitztigui v. Guadalupe, etc., Mining Co., 92 Tenn., 600; Wal-
lace v. Lincoln Savings Bank, 89 Tenn., 630.

2. EQUITY. Pleading. Demurrer.
Demurrer to the bill as a whole which is not good to the whole
must be *held* bad *in toto.* (*Post, pp.* 614-618.)

*On the question of liability of Bank directors in case of bad
loans or investments, see notes in 55 L. R. A., 762; 39 L. R. A. (N,
S.), 173. •

133 Tenn. 39]                    (609)

3. **BANKS AND BANKING.** Officers and agents. Liability to bank. Negligence as to loans..

A bill filed at the instance of the chancellor by the receiver of an insolvent bank to recover of officers and directors for loans negligently made was maintainable although the assets of the bank were not first exhausted, since the suit was by the bank itself, i. e., by its receiver in its right, to hold its agents, the directors, liable for negligence, and the measure of damages was the amount of the negligent loans finally lost after due efforts to collect. (*Post, pp.* 614-618.)

4. **EQUITY.** Pleading. Disregard of foreign matter.

Foreign matter contained in a pleading must be disregarded on demurrer. (*Post, pp.* 614-618.)

5. **BANKS AND BANKING.** Officers and agents. Right of action. Immaterial matter.

The right of action of the receiver of an insolvent bank at the instance of the chancellor to recover of officers and directors for loans negligently made was not impaired by the fact that, if all the assets in the receiver's hands should be realized and the whole demand made against the directors be successfully prosecuted, there would not be enough assets produced to satisfy the bank's debts, since the bank, owning the rights sued on, was entitled to collect not only for the payment of creditors but for distribution among stockholders. (*Post, pp.* 618, 619.)

6. **ACTION.** Misjoinder of causes of action. Parties involved.

A bill by the receiver of an insolvent bank at the instance of the chancellor to recover of officers and directors for loans negligently made was not bad for misjoinder of parties complainant on the ground that it was substantially one by creditors and stockholders to enforce their respective rights against the directors, while a right of action of creditors is *ex delicto*, depending on intentional fraud or willful mismanagement, and that of stockholders is based on contract, sustainable by proof of gross negligence alone, since the suit was in legal effect by the bank itself. (*Post, pp.* 619-621.)

Code cited and approved: Secs. 2086, 2104 (S.).

Green v. Officers & Directors of Trust Co.

7. **BANKS AND BANKING. Officers and agents. Liability to bank. Action. Pleading.**

The allegations of a bill by the receiver of an insolvent bank at the instance of the chancellor against its officers and directors to recover for fraud, willful mismanagement, and negligence bringing about the insolvency, that the defendants carried as solvent large assets in fact insolvent, published false statements, carried as cash items tickets, miscellaneous papers, and overdrafts which would be lost to the bank through insolvency, that the directors were guilty of negligence in permitting officers to extend to themselves a heavy line of credit and to lend to concerns in which they were personally interested large amounts of money, which would prove nearly a total loss, all of which could have been prevented by the directors by the exercise of ordinary diligence, were sufficient to justify overruling a demurrer, since to make a case against the directors it was unnecessary to allege they were guilty of fraud and wilful mismanagement, the allegations of negligent conduct being sufficient, though allegations showing fraud and willful mismanagement would have been proper. (*Post, pp.* 621-623.)

Cases cited and approved: State v. Standard Oil Co., 120 Tenn., 86; Wallace v. Lincoln Savings Bank, 89 Tenn., 630.

Codes cited and construed: Secs. 2067, 2068 (S.).

8. **BANKS AND BANKING. Officers and agents. Liability to bank at common law.**

Under the common law a bank itself has the right to redress for injuries inflicted upon it by the acts denounced by Shannon's Code, sections 2067, 2068, and 3242, providing that intentional fraud in failing to comply with the articles of incorporation, or in deceiving the public or individuals in relation to their liabilities, subjects all officers, stockholders, or directors, knowingly participating therein, to damages at the suit of any person injured; that the diversion of the funds of the banks, the payments of dividends leaving insufficient funds to meet its liabilities, the keeping of false books or accounts, whereby any one is injured, and the making and publishing of false reports, are such frauds as

will subject those actively concerned to damages at the suit of any person injured; and that any director of any bank who shall be guilty of any fraud or willful mismanagement by which loss shall fall upon its creditors shall be individually liable for such loss. (*Post, pp.* 623, 624.)

9. **EQUITY. Pleading. Multifariousness.**

A bill by the receiver of an insolvent bank filed at the instance of the chancellor against its officers and directors to recover for loans negligently made, which joined directors who served five full terms and those who served only a part of such five terms, was multifarious as to the short term defendants, though the defendants who served during all the terms could not object that the others were included with them for any period of time within the years during which they served, as they were connected with each of all the defendants in some part of the litigation. (*Post, pp.* 624, 625.)

10. **EQUITY. Pleading. Multifariousness.**

Whether a bill should be declared multifarious is largely a matter of discretion controlled by considerations of the inconvenience to the parties and the court of permitting the examination of disconnected controversies in the same litigation. (*Post, pp.* 625-628.)

Cases cited and approved: Insurance Companies v. Confectionery Co., 124 Tenn., 247; Emerson v. Gaither, 103 Md., 564; Wallace v. Lincoln's Savings Bank, 89 Tenn., 630; Briggs v. Spaulding, 141 U. S., 132.

11. **EQUITY. Pleading. Demurrer.**

The allegations of a bill must be taken as true by the appellate court on hearing to review a decree dismissing the bill on demurrer. (*Post, p.* 628.)

12. **EQUITY. Pleading. Demurrer.**

Every reasonable presumption must be indulged in favor of a bill when opposed by a demurrer. (*Post, p.* 628.)

Green v. Officers & Directors of Trust Co.

13. **BANKS AND BANKING.** Officers and agents. Liability to bank. Action. Pleading.

A bill by the receiver of an insolvent bank, filed at the instance of the chancellor, to recover against its officers and directors for loans negligently made, did not need to set out the particular circumstances of each loan, showing the situation and surroundings of the parties, since all complainant was required to do was to make a *prima facie* case of negligence. (*Post, pp.* 628, 629.)

14. **EVIDENCE.** Judicial Notice. Banking custom.

The court will judicially know that in Tennessee the duty to make loans does not ordinarily devolve on the directors of a bank. (*Post, pp.* 629, 630.)

15. **BANKS AND BANKING.** Officers and agents. Liability to bank. Action. Pleading.

In suit by the receiver of an insolvent bank at the instance of the chancellor to recover against its officers and directors for loans negligently made, the fact that a large number of items catalogued in the bill as cash items and overdrafts were undated did not render the bill demurrable as to defendants who served five full directorates, the period sued for; it being alleged that the items occurred during such period. (*Post, pp.* 630, 631.)

---

FROM KNOX

---

Appeal from the Chancery Court of Knox County.— R. H. SANSOM, Special Chancellor.

GREEN, WEBB & TATE and WRIGHT & JONES, for appellant.

JAMES B. WRIGHT, SHIELDS & CATES, L. H. SPILMAN, LINDSAY, YOUNG & DONALDSON and JOHNSON & COX, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

It appears from the bill that the receiver was appointed by the chancellor in a suit heretofore brought by the creditors and stockholders of the Knoxville Banking & Trust Company to wind it up as an insolvent concern. It also appears that by an order entered in that case the receiver was directed to file the present bill against the officers and directors. Its purpose was to hold them liable for fraud, willful mismanagement, and negligence whereby the beforementioned insolvency was brought about and the bank utterly ruined. Twenty-four grounds of demurrer were filed, all of which were overruled by the chancellor except the last, and as to his action upon the latter no appeal has been prosecuted to this court. The complainant, however, has appealed from the decree dismissing his bill upon the twenty-three grounds referred to.

It will be unnecessary for us to consider these grounds of demurrer in detail, presenting as they do very many attacks upon the bill from various angles. The counsel in their briefs have practically agreed upon the chief questions presented, and to these we shall in the main confine our attention, only referring to the demurrers themselves where it may be necessary to render our views, or the reasons for our decision, more clear.

The first ground is that the action is premature. We do not think this objection is well taken.

It is true the bill concedes that a considerable percentage may be collected from some of the large loans alleged to have been improvidently made, and now in part insolvent; and it must follow that the extent of the liability of defendants for these cannot be ascertained until such special matters are settled by exhaustion of the debtors, yet that need not delay the bringing of suit to recover from the directors as to those loans, improvidently made, if they are otherwise liable, where the debtors have been exhausted or it has been lawfully made to appear that they are insolvent, that is, that the corporation has suffered loss in respect of these matters by reason of the negligence of the defendants. The bill states many instances in which loans, alleged to have been improvidently made, were, at its filing, wholly insolvent; indeed, wholly insolvent when made.

The cases of *Johnson* v. *Churchwell,* 1 Head (38 Tenn.), 146, *Allison* v. *Coal Co.,* 87 Tenn., 63, 9 S. W., 226, *Jackson* v. *Meek,* 87 Tenn., 69, 72, 73, 9 S. W., 225, 10 Am. St. Rep., 620, and *Albitztigui* v. *Guadalupe, etc., Mining Co.,* 92 Tenn., 600, 603, 22 S. W., 739, cited by defendants, do not apply.

In *Johnson* v. *Churchwell* the action was against the directors of a bank under certain provisions of its charter, to hold them personally liable, on certain circulating notes issues of the bank, alleged to have been over-issues, on the ground that they had violated the terms of the charter in making such issues, and that the bank having failed, leaving the notes unre-

deemed, and its refusal to pay them having been made on demand, the plaintiffs were injured to the extent of the face of the notes. The court held there could be no action brought under the charter to recover the amount of the notes until there had been a prior judicial determination of the violation of the charter, and likewise until there had been an exhaustion of the assets of the bank. As to the latter point, it was said that the measure of the liability of the directors would be the amount which the assets of the corporation would fall short of discharging its liabilities, caused by the defendants' dereliction. Of course, it is true, as we have already intimated, that the present suit is premature as to those alleged improvident loans that are not wholly insolvent, but out of which collections may yet be made. This results, not from what may be held in any given case or authority, but from the fact that the basis of the liability of the directors, in a case of the kind before us, is negligence, and there can be no recovery without injury or damage resulting from the negligence, and this cannot be ascertained as to certain loans mentioned until the borrowers under the loans have been exhausted. But in the case before us hundreds of improvident loans are alleged, very many of which are charged to have been insolvent and uncollectible at their inception, and ever since. As to such loans there is no question of waiting for an exhaustion of the debtors. It is true that a special demurrer directed to those special parts of the bill in which it is alleged that collections are yet to be antici-

pated from certain loans, on the ground that as to these the bill is premature, would be bound to be successful; but there is no such demurrer. On the contrary, the demurrer is to the bill as a whole, and not being good to the whole must be held bad *in toto*. The theory of the demurrer seems to be that the suit is premature because the assets of the corporation were not first exhausted. This objection is necessarily altogether inapplicable, because this suit is one by the corporation itself, that is, by its receiver, in right of the corporation, to hold its agents, the directors liable for negligence, and the measure of damages is the amount of the alleged negligent loans finally lost after due efforts to collect, that is, if the directors are liable at all, under the facts stated in the bill. There are, it is true, some allegations in the bill, to which we shall later refer, quite unusual in, if not inapplicable to, a bill of the corporation or its receiver, and generally appearing only in a suit filed directly by creditors, themselves; but, in any event, such matters cannot change the controlling fact that the present bill was filed pursuant to the order of the chancellor, made in an insolvency proceeding instituted in the chancery court by creditors and stockholders for the purpose of winding up the corporation. The bill, in its essential nature, then, is a bill by the corporation to hold its directors liable (*Wallace* v. *Lincoln Savings Bank*, 89 Tenn. [5 Pick.], 630, 634, 635, 15 S. W., 448, 24 Am. St. Rep., 625), and can lawfully contain only matters fit for such a pleading. All foreign matter contained

in it must be disregarded. The bill being one of the kind just indicated, of course no contention can be made that the assets of the corporation must be exhausted as a preliminary to their collection, as this would be a patent contradiction both in word and act.

*Allison* v. *Coal Co.*, supra, is a case substantially similar to *Johnson* v. *Churchwell*. The case of *Jackson* v. *Meek*, supra, rests on the same principle. There an effort was made by an employee to hold the stockholders of a corporation liable, under a charter provision, for wages unpaid by the latter, and it was held that such a suit would not lie until the assets of the corporation had been exhausted. The case of *Albitztigui* v. *Gaudalupe, etc., Mining Co.*, supra, stands on the same general ground. There an effort was made by the creditors to compel the shareholders and directors of a corporation to pay the amount of debts incurred in excess of the corporate stock, and it was held the suit could not be maintained because it appeared there were plenty of assets on hand to pay all of the debts.

The present bill, anticipating the defense of prematurity, alleges that if all of the assets already in the receiver's hands shall be realized, and likewise the whole demand made against the directors be successfully prosecuted, still there will not be enough produced to satisfy even the debts. We do not think this fact is material, as the defendants correctly insist, because, since the rights sued on, so far as applicable to the frame of the bill, belong to the corporation, it

would, through its receiver, be entitled to collect, if its demands are well based, first for the payment of creditors, and next for distribution among the stockholders. The allegation, however, is pertinent to another aspect of the case, under which it is contended, in support of one of the demurrers, that the bill cannot be maintained for the benefit of stockholders, since it does not appear there were any stockholders other than the defendants themselves, and the court would not collect from them money to be immediately returned to them.

There being, as already indicated, no demurrer directed solely to those parts of the bill seeking a recovery in respect of loans not wholly insolvent, the bill must for the present stand as to these matters along with the rest, and the question in respect of such matters can hereafter arise only on objections made to the testimony that may be offered to show damages accrued in respect of them, unless in the course of the proceedings facts may develop showing that pending the present suit, before closing the account, the debtors referred to have been exhausted, so that the damages arising may be shown.

The next question is whether there was a misjoinder of parties complainant. This must be answered in the negative.

It is insisted for defendants that the bill is substantially one filed by creditors and stockholders as such to enforce their respective rights against the directors; that the right of action of the former is

*ex delicto,* depending on proof of "intentional fraud or willful mismanagement," while the latter is based on contract, and may be sustained by proof merely of gross negligence. As we have previously indicated, the suit is in legal effect an action by the corporation itself. There is only one complainant, the receiver of the corporation. The allegation is many times repeated that the defendants were guilty of "fraud and willful mismanagement;" but there are also allegations of simple negligence and numerous instances stated, involving in the aggregate many thousands of dollars, wherein the defendants "made and caused to be made" loans which were wholly insolvent at the time they were made, so continued, and were total losses to the corporation. It is also alleged that the defendants failed to make the stated examinations required by law (Shan. Code, secs. 2086, 2104), and thus failed to exercise due supervision over the officers; that too much power and control over the business of the bank had been committed to the officers of the bank, the president, cashier, and assistant cashier, who had committed frauds, which could have been detected by the directors by the exercise of reasonable diligence, but which they failed to exercise; and that by these frauds the bank was hastened to insolvency. Among the acts of fraud alleged against the officers, indeed against all of the defendants, are carrying as solvent large assets which were in fact insolvent, the publishing of false statements, the carrying, as cash, items involving a great many thou-

sands of dollars, which were not cash, but "tickets," miscellaneous papers, and overdrafts, practically all of which will be lost to the bank, through insolvency; that among these there is a "cash ticket" against the president, W. H. Gass, for $3,081.05, a draft paid for the cashier Willis of $531, cash tickets against him for $5,533.30, a stock certificate brought for him, $400, in the Knoxville Auto & Garage Company, a concern of doubtful solvency, an overdraft of the said Gass for $5,138.32, an overdraft of the said Willis for $5,937.26, and another against him of $3,420.70. It is alleged that the defendant directors were guilty of negligence in permitting these officers to extend to themselves such a line of credit; that the defendants were guilty of other negligence in permitting the said officers Gass and Willis to lend to certain concerns in which they were personally interested very large sums of money, running into thousands of dollars, viz., to the McCormick Furniture Company, the Vine Street Furniture Company, S. M. Beaumont Company, Knoxville Auto & Garage Company, Tennessee Medicine Company, Picture Plays Theater Company, and Bonita Theater Company; that these loans will prove nearly a total loss; and that all could have been prevented by the directors by the exercise of ordinary diligence.

The foregoing constitute sufficient allegations of negligence on the part of the directors to justify overruling the demurrer. *State* v. *Standard Oil Co.,* 120 Tenn., 86, 108, 110 S. W., 565; *Wallace* v. *Lincoln Savings Bank,* 89 Tenn., 630, 652, 653, 15 S. W., 448, 24

Am. St. Rep., 625; 10 Cyc., 831, 832, 833. To make a case against the directors it was unnecessary to allege that they were guilty of fraud and willful mismanagement, though surely they would be liable to the corporation for injury to its assets or business caused by such conduct on their part; the allegation of negligence was enough, still, if there were facts showing fraud and willful mismanagement causing injury, it was proper that such matters should be likewise presented in the bill.

Rights of action of the latter kind, however, under statutes to be presently noticed, are especially intended to furnish a means of direct relief to creditors, and all others suffering injury by the conduct referred to, through actions brought by them against directors or officers or stockholders. These rights of action are secured to such persons by Shannon's Code, secs. 2067 and 2068, which are as follows:

"2067. Intentional fraud in failing to comply substantially with the articles of incorporation, or in deceiving the public or individuals in relation to their liabilities, subjects all officers, stockholders, or directors, knowingly participating therein, to the penalties of a misdemeanor, and, moreover to damages at the suit of any person injured thereby.

"2068. The diversion of the funds of the corporation to other objects than those mentioned in the incorporation; the payment of dividends which leave insufficient funds to meet the liabilities of the corporation; the keeping of false books or accounts whereby any

one is injured; and the making and publishing of false reports, are such frauds as will subject those actively concerned therein to the penalties of the preceding section.''

Another guaranty of safety is given creditors in section 3242, which reads:

''Each stockholder in any of the banks of this State shall be individually liable for any loss sustained by the creditors of the institution, to the amount and value of his stock, until he has paid the same in full, on his original subscription. And if any director or directors of any of the banks in this State shall be guilty of any fraud or willful mismanagement of the affairs of such bank, by which any loss shall be occasioned to its creditors, such director or directors, upon legal ascertainment of the fact, shall be individually liable for such loss, and all the stockholders assenting thereto shall be liable in like manner.''

But without regard to the statutes referred to, and without dependence on them, we repeat, the corporation itself would under the common law have the right to redress for any injuries inflicted upon it by any of the acts denounced by these statutes.

Therefore the allegations of ''fraud and willful mismanagement,'' along with the allegations of negligence, do not make the bill a direct proceeding by creditors and stockholders, or by either. Indeed, the origin of the bill was such as necessarily to make it a bill by the corporation through its receiver, its filing having

been directed by the chancellor in the insolvency proceeding in which the receiver was appointed.

It is next insisted that the bill is multifarious, and we think this contention is well taken.

It sets out the names of the several boards of directors between the years of 1908 and 1912, and inclusive of those years, and shows the date of the service of each individual director.

It appears that the following served during all the years mentioned: J. W. Hope, Joseph Knaffl, Charles H. Smith, W. H. Gass, W. T. Newton and Charles J. McKinney.

The following served only from January 16, 1908, to January 12, 1909, viz: S. A. Lackey.

The following served from January 16, 1908, to January 12, 1909, and from the latter date to January 11, 1910, viz: William Brakebill.

The following served from January 16, 1908, to January 12, 1909, and from the latter date to January 11, 1910, and from the date last mentioned to January 10, 1911, viz: James R. Wooldridge.

The following served from January 12, 1909, to January 11, 1910, and from the latter date to January 10, 1911, and from the date last mentioned to January 9, 1912, viz: G. J. Ashe.

The following served from January 11, 1910, to January 10, 1911, and again from January 9, 1912, till the failure of the bank in the latter part of the year, viz: Charles H. Bacon.

The following served from January 12, 1909, to January 11, 1910, and from the date last mentioned to January 10, 1911, and from that date to January 9, 1912, and from that date to the failure of the bank; that is, during all of the years except the first year, or from 1909 to the end, viz.: N. B. Kuhlman and Arthur Groves.

The following served only from January 9, 1912, to the failure of the bank, viz.: H. G. Hutchinson.

It is frequently a very difficult question to determine whether a bill should be declared multifarious; indeed, it is largely a matter of discretion, controlled by considerations of the inconvenience to the parties and to the court of permitting the examination of disconnected controversies in the same litigation. Gibson's Suits in Chancery (2d Ed.), sec. 149; Id., sec. 284; *Insurance Companies* v. *Confectionery Co.*, 124 Tenn., 247, 267-289, 136 S. W., 915, 34 L. R. A. (N. S.), 897.

We think it clear that it would be unjust to the defendants S. A. Lackey, William Brakebill, Charles H. Bacon and H. G. Hutchinson to continue them in a bill with those who served during all of the five terms, and on the remand hereinafter ordered permission will be given to file separate bills against the parties named without additional process pursuant to the authority granted the court in Shannon's Code, section 6136. As to the defendants who have served during all the five terms, they cannot object that others are

133 Tenn. 40

included with them for any period of time covered by the years during which they served, since they would be connected with each one of all the defendants in some part of the litigation. The bill can therefore stand as to them. *Emerson* v. *Geither*, 103 Md., 564, 64 Atl., 26, 8 L. R. A. (N. S.), 738, 7 Ann. Cas., 1114. As to Mr. Wooldridge, who served during three of the terms, Mr. Ashe, who likewise served through three, and Messrs. Kuhlman and Groves, who served through four of the five terms, we think there would be little practical inconvenience in permitting their cases to remain with those of Hope, Knaffl, and others who served during all the terms.

The foregoing substantially covers all of the questions made by the demurrers, so far as they can affect the disposition of the case here; but there are some questions which have been argued that we think should be referred to, and our views stated, for the guidance of the parties, and of the chancellor when the case comes to a hearing on the issues made.

The first of these is the measure of duty incumbent upon directors in this State. Without discussion this matter, we say that we firmly adhere to the rules laid down on this subject in *Wallace* v. *Lincoln's Savings Bank*, 89 Tenn., 630, 15 S. W., 448, 24 Am. St. Rep., 625, and thoroughly agree with and follow the opinion of the supreme court of the United States in *Briggs* v. *Spaulding*, 141 U. S., 132, 11 Sup. Ct., 924, 35 L. Ed., 662. These cases are in substantial accord.

It is insisted in behalf of the defendants that under the by-laws the directors were authorized to appoint a finance committee, and that such a committee was appointed and served during the whole time; that on this committee was devolved the duty of making loans and investments. The allegations of the bill upon this subject are as follows:

"On January 16, 1908, the defendants J. W. Hope, Joseph Knaffl, and W. H. Gass were elected as a finance committee of the board of directors, and these defendants have since said date served as said committee; that is, having held that position by election, they, as will more fully be alleged hereinafter, have inefficiently and negligently performed the duties which ought to have been performed by said committee, and have failed to perform duties which should have been performed by said committee, and have been guilty of fraud and willful mismanagement in law as such. . . .

"Your complainant would further show that the defendants Joseph Knaffl, J. W. Hope, and W. H. Gass, were by the other defendants constituted a finance committee, and the finance committee also was incumbered with the duty of inspecting the affairs of the said banking institution, and knowing of its transactions, and of reporting them in detail to the directors; and the directors likewise were incumbered with this duty, and were furthermore incumbered with the duty of seeing that the finance committee performed its duty; and the defendants all wholly failed in all

these respects, and all of said willful mismanagement and negligence resulted in the above set out and still other losses to the creditors and stockholders of said banking institution.''

Upon this hearing we must receive as true the allegations of the bill. We cannot therefore go into the consideration of how far the directors might rely upon the finance committee's performing its duty, or how far they would be relieved of looking into the transactions of the bank by reason of the existence of such a committee.

It is insisted that the defendant directors did not make the loans complained of; but, however the facts may be, the bill alleges they did make the loans, and caused them to be made, and we must at this time accept this as the true statement of the facts, in considering the bill and demurrer. An argument is made construing the expressions ''made and caused to be made'' and ''made and permitted to be made'' as equivalent simply to an allegation that the directors permitted the loans to be made. This would not be a correct method of construing a bill when opposed by a demurrer, the rule being that every reasonable presumption must be made in favor of the bill. *State v. Standard Oil Co.*, supra.

It is said that there is no sufficient allegation of facts to support the charge of fraud and willful mismanagement, or even of negligence. We have already adequately considered this matter. We shall notice however, in this immediate connection a further point

made in the defendant's brief, to the effect that the particular circumstances of each loan are not set out, showing the situation and surroundings of the parties that would rightly move the discretion of any one making a supposed loan. This is not necessary. All that the complainant need do is to make a *prima facie* case of negligence, and this we think has been done. It is true this *prima facie* case may be met by the defendants showing qualifying circumstances that will completely overturn the charge of negligence either by showing that under all the circumstances the loans were properly made, or under the facts as they appeared to the parties at the time.

At this point we deem it proper to say that in deciding this case we have rested specially upon the allegation that the directors themselves made the loans, and caused them to be made. We judicially know that as a rule this duty is not ordinarily in this State devolved on directors; but, since the bill alleges that these acts were undertaken by the directors, we must accept it as true, and what we have written must be construed in the light of this fact. There is another branch of the inquiry, however, to which we direct attention. That is, the allegations of the bill already referred to that the defendants failed to make the examinations which the statute requires to be made every six months, and that if such examinations had been made the improvident conduct of the officers and of the finance committee would have been discovered, from time to time, and much of it prevented from hap-

pening thereafter. This is an element of negligence distinct from that charged in respect of making and causing to be made the several hundred loans complained of; so that, in case the allegations of the bill should not be sustainable upon the subject of making and causing to be made, the loans, there yet remains the allegation of negligence based on the want of due examination and oversight.

There are a large number of items catalogued in the bill under the head of cash items, or items carried as cash, and overdrafts. All of these are without date. A demurrer is based on this fact. Such demurrer, however, could not be good as to those of the defendants who served during the whole time, for it is alleged that these items occurred during the period sued for; and there is no demurrer filed separately by either of the defendants who are left in the bill, and whose terms of service do not cover the whole time. However, this is not material since we have held that as to these latter, viz., Wooldridge, Ashe, Kuhlman, and Groves, no inconvenience sufficiently grave will be experienced to justify the court, under the theory of multifariousness, in separating these defendants from the main current of the litigation. Their rights in respect of these matters can be sufficiently preserved by exceptions to evidence offered in respect of the items referred to, in so far as dates are not furnished, as showing such items applicable to the periods during which the several defendants last named served as directors.

The result of the whole matter is that all of the demurrers will be overruled, except those based on the ground of multifariousness, and these will be sustained so far as concerns the defendants S. A. Lackey, William Brakebill, Charles H. Bacon, and G. H. Hutchinson. A decree will also direct the cause to be remanded to the court below, to the end that issues may be made as to the other defendants, and with leave to complainant to file separate bills without new process as to the said four parties last named.

The costs of the appeal will be divided equally between the complainant and the defendants other than the last four named; these latter will pay no costs.